**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PYROMATICS, INC., Respondent.**

No. 81–1139.

United States Court of Appeals, Sixth Circuit.

April 26, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, Elaine Patrick, N. L. R. B., Washington, D. C., for petitioner.

Michael C. Cohan, Cavitch, Familo & Durkin Co., Cleveland, Ohio, for respondent.

Before BROWN, Circuit Judge, PHILLIPS, Senior Circuit Judge, and TUTTLE,* Senior Circuit Judge.

## ORDER

Milton Willis was terminated from his employment with Pyromatics, Inc., an East Cleveland, Ohio manufacturer of silica products, on December 7, 1978. Willis and other employees in the core department at Pyromatics had been petitioning management since November 29, 1978, for permission to take leaves of absence between Christmas and New Year's Day. Because of a significant backlog of production in the core department, the Company repeatedly denied this request. This decision was reiterated at a meeting of the core department the morning of December 6, 1978. As the meeting began to break, Willis commented to his supervisor, Ken Bittner, that if the employees did not get the requested time off, they would all come down with the "quartz flu." When Bittner inquired as to Willis's meaning, Willis explained that police officers who fake an illness in order to

not report to work have the "blue flu," and that since he and his co-workers worked with quartz they would come down with "quartz flu."

Willis then drafted a petition to be presented to all the core department employees, and with Bittner's permission circulated it among the employees and secured their signatures. The petition stated: "We, the following undersigned members of the Core Dept., would like a leave of absence, from Tues. Dec. 26th thru Fri. Dec. 29th." The petition was presented to Bittner, who forwarded it to Ted Loxley, Pyromatic's president, later that day and also related the incident about the "quartz flu."

Willis was fired by Loxley the next morning. Willis claims he was told by Loxley that he was terminated for circulating the petition. Loxley claims he never mentioned the petition. Willis testified that Loxley informed him of the decision to terminate him when he was summoned to Loxley's office in the following manner: "I know that you don't seem to be satisfied around here by passing the petition and that's going a bit too far and for that reason, you are terminated effective immediately." Loxley testified that he told Willis "that in light of our inability to really satisfy his needs, that I thought it would be best if he just left immediately." Loxley claimed that he never stated to Willis that he was fired for circulating a petition.

Willis's termination notice, which was filled out by Pyromatic's personnel manager and signed by Bittner, stated that he was discharged for "soliciting w/ petition to interfere w/ production (work stop)." A memorandum drafted by Loxley detailing Willis's termination stated: "It was decided that Milt's actions of threatening to stop production and circulating an unauthorized petition during working hours required his termination." A form sent to the Ohio Bureau of Employment Services following this incident stated that Willis was "termi-

---

* The Honorable Elbert P. Tuttle, Senior Judge, United States Court of Appeals for the Elev-   enth Circuit, sitting by designation.

nated for threatening the Company with a work stoppage. Copies of unauthorized petition and supervisory statements attached."

Willis filed a claim with the National Labor Relations Board, alleging he was fired for violating Pyromatic's non-solicitation rule and for acting in concert with other employees in seeking time off from work. After a hearing, an administrative law judge determined that Pyromatic's non-solicitation rule violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976). Pyromatics's non-solicitation rule stated as follows:

> Solicitations for any cause are a nuisance to most people and adversely affect the efficiency and production of the individual departments. Therefore, solicitations, lotteries, sales of raffle tickets and sale of merchandise are forbidden unless specific permission has been granted by the office. The solicitation for membership in organizations of any kind during working hours is absolutely prohibited unless specific permission is granted by the office. Printed matter not pertaining to PYROMATICS business may not be distributed in work areas at any time. Printed matter may not be circulated anywhere on Company property by an employee during working hours.

The ALJ's order to cease and desist from enforcing any rule prohibiting union or other concerted activities during working hours was not excepted to before the Board, nor has it been challenged on appeal; accordingly, the court concludes that this portion of the ALJ's decision as adopted by the Board should be enforced.

The ALJ also determined that Willis's termination was a violation of § 8(a)(1). The ALJ concluded that the "quartz flu" incident played no role in Willis's firing, and that Willis was terminated solely for his protected activity of circulating the petition to seek time off from work. Alternatively, the ALJ determined that Willis's firing was a violation even if the "quartz flu" incident was a factor, since the firing was motivated in part by Willis's protected activity of circulating the petition.

The Board affirmed the ALJ's ruling, and agreed with his conclusion that the "quartz flu" incident had nothing to do with the firing. Furthermore, the Board stated that even if that incident was a factor, that the Company "failed to demonstrate that it would have discharged Willis absent his circulation of the petition." 251 N.L.R.B. No. 141 n.3 (1980).

On this application for enforcement of the Board's order, Pyromatics has challenged the Board's determination contending that the circulation of the petition was merely background information which gave credence to Willis's threat to fake an illness and initiate a work stoppage, which was the Company's sole reason for terminating Willis. Pyromatics claims that there was not substantial evidence to support the Board's finding that Willis was discharged for engaging in protected concerted activities.

We conclude that the Board's determination and order are supported by substantial evidence. There is substantial evidence to support a finding that the principal reason or "dominant motive" (*Charge Card Assoc. v. NLRB*, 653 F.2d 272 (6th Cir. 1981)) for the discharge of Willis was his protected activity of circulating the petition.

The Board's order, 251 N.L.R.B. No. 141 (1980), is therefore enforced in full.